**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**



Joshua Paternoster-Cozart
    Petitioner

v                                               Case No. 4 | 5 C V | 

Sherry Glasgow,
Nathan Davis,
Kim Kritz,
City of Hampton,
Hampton/Newport News Community Services Board,
Commonwealth of Virginia,
Virginia Department of corrections.
    Respondents

## COMPLAINT

1. Jurisdiction

Petitioner brings this complaint under this courts jurisdiction as established by 42 USC 2000cc. Where the Hampton Virginia Drug Court is a state program which receives various federal funds for its operation. All events and incidents alleged in this complaint occurred in the city of Hampton Virginia, under this courts jurisdiction and all parties to this action reside within this courts jurisdiction. These allegations occurred weekly between July 14, 2010 and March 7, 2011.

2. Parties

Petitioner, Joshua Paternoster-Cozart, is a resident of Hampton Virginia, and was a participant in the Hampton Virginia Drug Court program at all times the events mentioned in

this complaint occurred. Petitioner is suing each defendant in their individual and official capacity.

Respondent, Sherry Glasgow, was and is currently the Director of the Hampton Virginia Drug Court Program. Ms. Glasgow is Employed by the Hampton/Newport News Community Services Board ("H/NNCSB"). Ms. Glasgow is responsible for creating and implementing the rules of the Drug court program.

Respondent, Nathan Davis, was petitioners Drug Court Therapist at all times in this complaint. Mr. Davis was employed by the H/NNCSB during the events raised in this complaint. Mr. Davis was responsible for imposing the rules of the Drug Court Program upon petitioner.

Respondent, Kim Kritz, was petitioners Probation officer, who supervised petitioners participation in the drug court program and made sure petitioner complied with the rules established by the drug court program and the Virginia department of corrections, division of probation and parole. Ms. Kritz was and is currently employed by the Virginia Department of Corrections.

Respondent, City of Hampton, owns the building where the events in this complaint arose. The city also provides funding to the Drug Court program as well as H/NNCSB.

Respondent, Hampton/Newport News Community Services Board, is responsible for the Drug Court program, as the drug court program is staffed and operated by the H/NNCSB. H/NNCSB receives federal funding.

Respondent, Virginia Department of Corrections, employs Ms. Kim Kritz. The department has authority to have petitioner arrested if he fails to comply with the terms of his

probation. The rules of the Drug court program were incorporated with the conditions of petitioners probation. The Virginia Department of Corrections receives federal funds.

Respondent, Commonwealth of Virginia, is a party responsible for implementing and overseeing the Hampton Virginia Drug Court Program. The Commonwealth of Virginia receives federal funds.

3. Allegations

As a part of the Drug Court program, petitioner was required to attend Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings. This was a requirement of participation in the drug court program.

The rules and regulations of the drug court program became conditions of petitioners probation. Ms. Kritz was the Probation officer assigned to supervise drug court participants, including petitioner.

The failure to follow the rules of the drug court program, including failing to participate and attend AA/NA meetings would result in sanctions being issued, including incarceration.

Prior to petitioners participation in the drug court program, he never attended an AA or NA meeting, and was unaware of the religious nature of the program.

As part of petitioners participation in the drug court program, he was required to attend 1 AA/NA meeting per day. Once employment was obtained, the required number of meetings to be attended changed to three per week.

All meeting attendance was verified with meeting slips which had to be filled out and signed by the facilitator of the AA/NA meeting, and turned in to drug court staff weekly.

After attending several meetings, petitioner realized that the meetings were religious in

nature. Petitioner discovered this by the recitation of the Lord's prayer at the conclusion of the AA meetings and the Serenity prayer at the close of the NA meetings.

Petitioner also became aware of the religious nature of the AA/NA meeting by learning the steps to be followed in the path to recovery. The steps themselves are religious. The 12 steps, as set forth in AA literature is as follows:

> 1. We admitted we were powerless over alcohol—that our lives had become unmanageable.
> 2. Came to believe that a Power greater than ourselves could restore us to sanity.
> 3. Made a decision to turn our will and our lives over to the care of God as we understood Him.
> 4. Made a searching and fearless moral inventory of ourselves.
> 5. Admitted to God, to ourselves, and to another human being the exact nature of our wrongs.
> 6. Were entirely ready to have God remove all these defects of character.
> 7. Humbly asked Him to remove our shortcomings.
> 8. Made a list of all persons we had harmed, and became willing to make amends to them all.
> 9. Made direct amends to such people wherever possible, except when to do so would injure them or others.
> 10. Continued to take personal inventory and when we were wrong promptly admitted it.
> 11. Sought through prayer and meditation to improve our conscious contact with God, as we understood Him, praying only for knowledge of His will for us and the power to carry that out.
> 12. Having had a spiritual awakening as the result of these Steps, we tried to carry this message to alcoholics, and to practice these principles in all our affairs.
> Copyright © 1952, 1953, 1981 by Alcoholics Anonymous Publishing (now known as Alcoholics Anonymous World Services, Inc.) All rights reserved.

Petitioner, as part of his participation in drug court program, was required to complete step work assignments as a part of phasing through the drug court program. This step work included reading from the AA/NA literature. Including reading from the AA big book and the NA book.

4. Relief

Petitioner seeks declaratory relief against each defendant, that the coerced participation in AA/NA through the drug court program violated his rights under the Establishment Clause of the First Amendment of the United States Constitution.

Petitioner also seeks compensatory damages and punitive damages totaling $2,000,000 against the defendants joint and severally.

Respectfully Submitted,

Date 12 Jan 2015

*J Cozart*

Joshua Paternoster-Cozart
256 N. Mallory St.
Hampton, Virginia 23664
757-696-0089

### Certification

I, Joshua Paternoster-Cozart, Hereby swear under the penalty of perjury, that the foregoing is true and based upon my personal knowledge. This 12 day of Jan 2015, 2014.

*J Cozart*
Joshua Paternoster-Cozart

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

<u>Joshua Paternoster-Cozart</u>
    Petitioner

v.                                                                       Case No.

<u>Sherry Glasgow,</u>
<u>Nathan Davis,</u>
<u>Kim Kritz,</u>
<u>City of Hampton,</u>
<u>Hampton/Newport News Community Services Board,</u>
<u>Commonwealth of Virginia,</u>
<u>Virginia Department of corrections.</u>
    Respondents

**MEMORANDUM OF LAW**

The religious nature of the Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) programs has been well established. Other courts have found that, because of the religious focus of the AA/NA programs, forcing prisoners and parolees into such programs violates their clearly established constitutional rights. *See* Inouye v. Kemna, 504 F.3d 705, 713 (9th Cir. 2007); *Warner v. Orange County Dept. of Probation*, 115 F.3d 1068 (2d Cir. 1997), *aff'd*, 173 F.3d 120 (2d Cir. 1999), *cert. denied sub nom.* Orange County Dept. of Probation v. Warner, 528 U.S. 1003 (1999); *Kerr v. Farrey*, 95 F.3d 472 (7th Cir. 1996).; see also *Nusbaum v. Terrangi*, 210 F. Supp. 2d 784 (E.D. Va. 2002). In *Inouye*, the court found that the pertinent Establishment Clause law forbidding coerced participation in AA was clearly established by "[t]he vastly overwhelming weight of authority." 504 F.3d at 714-15 (collecting cases).

Further, Virginia probation is part of the Virginia Department of Corrections, who has

been in prior litigation regarding coerced religious programming including AA, and was therefore fully cognizant of the religious nature and establishment clause implications of coerced participation. See: *Nusbaum v. Terrangi*, 210 F. Supp. 2d 784 (E.D. Va. 2002).

Petitioner had no prior knowledge of the religious nature of the AA/NA meetings prior to attending them as part of drug court, nor did petitioner know that the drug court program was based upon and taught the AA/NA steps. Petitioner never waived his First amendment rights when he entered the drug court program.

Waiver of a right must be knowing, voluntary, and intelligent *United States V. Morgan*, 51 F.3d 1105, 1110 (2d Cir. 1994), and the act of waiver must be shown to have occurred with awareness of the consequences. Id. Waiver is an intentional relinquishment or abandonment of a known right or privilege. *Johnson V. Zerbst*, 304 U.S. 458, 464 (1938). The waiver or loss of any fundamental right can neither "be presumed nor may it be lightly inferred". (*United States V. Mapp* 476 F .2d 67 ,77 12d Cir. 1973) (internal citations omitted). The court must "indulge every reasonable presumption against waiver of fundamental constitutional rights" Zerbst, supra at 464. Petitioner never waived his First amendment rights in agreeing to participate in the Drug Court program.

The Supreme Court has repeatedly made clear that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which `establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992) (quoting *Lynch v.B Donnelly*, 465 U.S. 668, 678, 104 S.Ct. 1355, 1361-62, 79 L.Ed.2d 604 (1984)) . *Warner, Id.*

Because the drug court program was imposed as a condition of probation, the rules of

the drug court program become conditions of probation. Therefore if petitioner did not attend the AA/NA meetings required by drug court he would be imprisoned for violating the terms of his probation. Further discovery would confirm this requirement.

As the Court made clear in *Board of Education of Kiryas Joel v. Grumet, 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994)*, "a principle at the heart of the Establishment Clause [is] that government should not prefer one religion to another, or religion to irreligion." *Id.* at 703, 114 S. Ct. at 2491; *see also Allegheny, 492 U.S. at 591, 109 S.Ct. at 3099-3100; School Dist. of Abington Township v. Schempp, 374 U.S. 203, 216-17, 83 S.Ct. 1560, 1568-69, 10 L.Ed.2d 844 (1963)*.

The Court "has unambiguously concluded that the individual freedom of conscience protected by the first Amendment embraces the right to select any religious faith or none at all." *Wallace v. Jaffree*, 472 U.S. 38, 53, 105 S.Ct. 2479, 2487-88, 86 L.Ed.2d 29 (1985). Under the Free Exercise Clause, "government may not compel affirmation of religious belief". *Employment Div., Dept. of Human Resources v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990).

Petitioner, influenced by the possibility that any objections or non-compliance could lead to a jail sentence or revocation of probation, attended the meetings. As the Supreme Court held in *Minnesota v. Murphy*, 465 U.S. 420, 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984), where the state expressly or implicitly asserts that "invocation of the privilege would lead to revocation of probation, it would have created the classical penalty situation, the failure to assert the privilege would be excused, and the prisoner's answers would be deemed compelled and inadmissible in a criminal prosecution.". "Petitioner was placed in a penalty situation by having to attend or face a jail sentence.

If petitioner consented to anything, it was his, initial attendance at meetings as part of his drug court and probation. If he thereafter learned that he was embarking on a more insistent philosophical indoctrination than he anticipated, it cannot be said that he consented to that or, under the facts of this case, reasonably foresaw it. Where in this case, petitioner agreed to participate in and follow the rules of the drug court program. Upon entering he learned he was required to attend AA/NA meetings. After attending some of these meetings, petitioner became aware of the religious nature and objected to drug court and probation staff. Petitioner was then told to attend or go to jail.